Raymond M. Hunter (#002360)
Martin R. Galbut (#002943)
Keith R. Galbut (#022869)
GALBUT & HUNTER
A Professional Corporation
2425 East Camelback Road, Suite 1020
Phoenix, Arizona 85016
Phone: 602.955.1455
Fax: 602.955.1585
Attorneys for Defendant/counterclaimant

# THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| E.P. CONSULTING, INC., a Delaware corporation; and LANCE RENFROW, <br><br> Plaintiffs, <br><br> vs. <br><br> BDP INNOVATIVE CHEMICALS COMPANY, a Florida corporation, <br><br> Defendant. | Case No. CV06-0009-PHX-MHM <br><br><br> **VERIFIED ANSWER AND COUNTERCLAIM** <br><br> (Assigned to Hon. Mary H. Murguia) |
| BDP INNOVATIVE CHEMICALS COMPANY, a Florida corporation, <br><br> Counterclaimant, <br><br> vs. <br><br> E.P. CONSULTING, INC., a Delaware corporation; LANCE RENFROW, an individual; and CLEAR SOLUTIONS USA, LLC, an Arizona limited liability company, <br><br> Counterdefendants. | |

Defendant/counterclaimant BDP INNOVATIVE CHEMICALS COMPANY (hereinafter "BDP", "Defendant", or "Counterclaimant") hereby answers the complaint of E.P. CONSULTING, INC. ("E.P.") and LANCE RENFROW ("Renfrow") (hereinafter collectively referred to as "Plaintiffs") herein as follows:

1    1.   BDP lacks sufficient knowledge or information to form a belief as to the

2    truth of the allegations contained in paragraph 1 of the Complaint, and therefore denies

3    them.

4    2.   BDP lacks sufficient knowledge or information to form a belief as to the

5    truth of the allegations contained in paragraph 2 of the Complaint, and therefore denies

6    them.

7    3.   BDP denies the allegations contained in paragraph 3 of the Complaint,

8    except to admit that BDP, at all times relevant hereto, was a corporation, formed and

9    existing under the laws of the State of Florida.

10    4.   BDP denies the allegations contained in paragraph 4 of the Complaint.

11    5.   BDP denies the allegations contained in paragraph 5 of the Complaint,

12    except to admit that one of the agreements entered into between the parties, the License

13    Agreement dated July 29, 2002 (the "License Agreement"), contained a choice of law and

14    forum clause referring to the courts of the State of Arizona.

15    6.   BDP lacks sufficient knowledge or information to form a belief as to the

16    truth of the allegations contained in paragraph 6 of the Complaint, and therefore denies

17    them.

18    7.   BDP denies the allegations contained in paragraph 7 of the Complaint except

19    to admit that BDP and Renfrow entered into a Letter of Understanding on May 6, 2002

20    ("the Letter of Understanding"), the terms of which speak for themselves.

21    8.   BDP denies the allegations contained in paragraph 8 of the Complaint except

22    to admit that BDP and Renfrow entered into the Letter of Understanding on May 6, 2002,

23    the terms of which speak for themselves.

24    9.   BDP denies the allegations contained in paragraph 9 of the Complaint.

25    10.   BDP denies the allegations contained in paragraph 10 of the Complaint,

26    except to admit that E.P. and Renfrow, on the one hand, and BDP, on the other hand,

2

entered into the License Agreement on July 29, 2002. The License Agreement remains in full force and effect.

11. BDP denies the allegations contained in paragraph 11 of the Complaint, except to admit that E.P., Renfrow, an entity by the name of Accseus, and BDP entered into an agreement on March 7, 2003 (the "March 2003 Agreement"), which was subsequently breached by Renfrow and E.P and/or for which BDP is entitled to rescission based on Plaintiffs' misrepresentation, Plaintiffs' fraud, mistake, want and/or failure of consideration, and/or impossibility.

12. BDP denies the allegations contained in paragraph 12 of the Complaint.

13. BDP denies the allegations contained in paragraph 13 of the Complaint.

14. BDP denies the allegations contained in paragraph 14 of the Complaint.

15. BDP denies the allegations contained in paragraph 15 of the Complaint.

16. BDP denies the allegations contained in paragraph 16 of the Complaint, except to admit that BDP did pay Renfrow for certain office expenses that were to be utilized in the furtherance of BDP's business.

17. BDP denies the allegations contained in paragraph 17 of the Complaint, except to admit that BDP did terminate its at-will consulting relationship with Renfrow by letter dated December 1, 2005.

18. BDP denies the allegations contained in paragraph 18 of the Complaint.

19. BDP denies the allegations contained in paragraph 19 of the Complaint.

20. BDP denies the allegations contained in paragraph 20 of the Complaint.

21. BDP denies the allegations contained in paragraph 21 of the Complaint.

22. BDP denies the allegations contained in paragraph 22 of the Complaint.

23. BDP denies the allegations contained in paragraph 23 of the Complaint.

24. BDP denies the allegations contained in paragraph 24 of the Complaint.

25. BDP denies the allegations contained in paragraph 25 of the Complaint.

26.     BDP denies the allegations contained in paragraph 26 of the Complaint.

27.     BDP denies the allegations contained in paragraph 27 of the Complaint.

28.     BDP denies the allegations contained in paragraph 28 of the Complaint.

29.     BDP denies the allegations contained in paragraph 29 of the Complaint.

30.     BDP denies the allegations contained in paragraph 30 of the Complaint.

31.     BDP denies the allegations contained in paragraph 31 of the Complaint.

32.     BDP denies the allegations contained in paragraph 32 of the Complaint.

33.     BDP denies the allegations contained in paragraph 33 of the Complaint.

34.     BDP denies the allegations contained in paragraph 34 of the Complaint.

35.     BDP denies the allegations contained in paragraph 35 of the Complaint.

36.     BDP denies the allegations contained in paragraph 36 of the Complaint.

37.     BDP denies the allegations contained in paragraph 37 of the Complaint.

38.     BDP lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 38 of the Complaint, and therefore denies them.

39.     BDP denies the allegations contained in paragraph 39 of the Complaint.

40.     BDP denies the allegations contained in paragraph 40 of the Complaint.

41.     BDP denies the allegations contained in paragraph 41 of the Complaint.

42.     BDP denies the allegations contained in paragraph 42 of the Complaint.

43.     BDP denies the allegations contained in paragraph 43 of the Complaint.

44.     BDP denies the allegations contained in paragraph 44 of the Complaint.

45.     BDP denies the allegations contained in paragraph 45 of the Complaint.

46.     BDP denies each and every allegation of the Complaint not expressly admitted herein.

**AFFIRMATIVE DEFENSES**

### For Their First Affirmative Defense

47.    This Court lacks personal jurisdiction over BDP.

### For Their Second Affirmative Defense

48.    These proceedings should be stayed pending the outcome of the action filed by BDP in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, (Case No. 48-2005-CA-010211-O) against E.P., Clear Solutions USA, LLC ("Clear Solutions"), and Renfrow on December 2, 2005 (the "Florida Lawsuit"). Plaintiffs' claims are properly asserted as counterclaims in that pending litigation.

### For Their Third Affirmative Defense

49.    This Court lacks subject matter jurisdiction over Plaintiffs' claims because of the pendency of the Florida Lawsuit.

### For Their Fourth Affirmative Defense

50.    Plaintiffs have failed to state a claim upon which relief can be granted.

### For Their Fifth Affirmative Defense

51.    Plaintiffs' claims should be dismissed for failure to join necessary parties.

### For Their Sixth Affirmative Defense

52.    Plaintiffs breached the agreements and failed to perform pursuant to their agreements with BDP; therefore, Plaintiffs are not entitled to any recovery.

### For Their Seventh Affirmative Defense

53.    Plaintiffs' claims are barred in whole or in part by Plaintiffs' breaches, fraud, bad faith, negligence, and other tortious conduct.

### For Their Eighth Affirmative Defense

54.    The March 2003 Agreement was and is void and/or voidable based on, *inter alia*, Plaintiffs' fraud, mistake, and/or misrepresentation in the inducement.

### For Their Ninth Affirmative Defense

55.   The March 2003 Agreement was and is void and/or voidable based on, *inter alia*, want and/or failure of consideration, and/or impossibility.

### For Their Tenth Affirmative Defense

56.   The Sub-License Agreement, entered into between BDP and Clear Solutions on or about November 7, 2004 (the "Sub-License Agreement"), was and is void and/or voidable based on, *inter alia*, Plaintiffs' fraud, mistake, and/or misrepresentation in the inducement.

### For Their Eleventh Affirmative Defense

57.   The Sub-License Agreement was and is void and/or voidable based on, *inter alia*, want and/or failure of consideration, and/or impossibility.

### For Their Twelfth Affirmative Defense

58.   Plaintiffs' trade secret claims are barred because, *inter alia*, Plaintiffs made no real effort to keep the formulas and variations secret, they were revealed in the marketed product, they were fully disclosed by issued patents, they were generally known to those skilled in the industry or trade, and/or they consisted of information easily acquired by persons in the industry from patents, literature, or known processes freely available.

### For Their Thirteenth Affirmative Defense

59.   Plaintiffs' bad faith, and/or a lack of good faith and fair dealing, bars their recovery.

### For Their Fourteenth Affirmative Defense

60.   Plaintiffs have suffered no damages and/or have failed to mitigate their damages.

For Their Fifteenth Affirmative Defense

61.    BDP is entitled to an offset and/or set-off, or to recoupment, by virtue of the aforesaid allegations and Defendant's counterclaims.

For Their Sixteenth Affirmative Defense

62.    BDP is entitled to an award of its attorneys' fees and costs under applicable law.

For Their Seventeenth Affirmative Defense

63.    Plaintiffs are estopped from asserting their claims.

For Their Eighteenth Affirmative Defense

64.    Plaintiffs' damages, if any, were not caused by BDP, and are otherwise speculative and not recoverable.

For Their Nineteenth Affirmative Defense

65.    Plaintiffs' claims are barred in whole or in part by the at-will nature of the consulting agreement, which has been terminated.  Even if the consulting agreement were only terminable for cause, there was cause for such termination due to the misconduct of Plaintiffs.

For Their Twentieth Affirmative Defense

66.    Plaintiffs' claims are barred in whole or in part by the doctrine of waiver.

For Their Twenty-First Affirmative Defense

67.    Plaintiffs' claims are barred in whole or in part by their illegality.

For Their Twenty-Second Affirmative Defense

68.    Plaintiffs' claims are barred in whole or in part by the doctrine of laches.

For Their Twenty-Third Affirmative Defense

69.    Plaintiffs are seeking to be unjustly enriched.

For Their Twenty-Fourth Affirmative Defense

70.    Plaintiffs may not recover against BDP because Plaintiffs have unclean hands and are otherwise equitably barred from recovery.

For Their Twenty-Fifth Affirmative Defense

71.    Plaintiffs' claims are barred because the purported damages cannot be established with reasonable certainty or accuracy. Further, Plaintiffs' damages claims, at a minimum, fail to take into account the cost of performance and all expenses associated therewith.

For Their Twenty-Sixth Affirmative Defense

72.    Plaintiffs' recovery is limited in whole or in part because the purported damages are not based on net lost profits, and are not discounted to present value.

For Their Twenty-Seventh Affirmative Defense

73.    BDP reserves the right to add additional affirmative defenses based on discovery to be conducted in this case.

**COUNTERCLAIM**

For its Counterclaim against E.P. CONSULTING, INC. ("E.P."), LANCE RENFROW ("Renfrow"), and CLEAR SOLUTIONS USA, LLC ("Clear Solutions"), Counterclaimant BDP alleges as follows:

**ADDITIONAL PARTIES**

74.    Counterdefendant Clear Solutions is an Arizona limited liability company, organized and existing under the laws of Arizona.

75.    Counterdefendants E.P., Renfrow, and Clear Solutions are hereinafter collectively referred to as "Counterdefendants".

**JURISDICTION AND VENUE**

76.     The claims made by BDP in this matter arise from, *inter alia*, Counterdefendants' breach of contract and tortious behavior which occurred, in large part, in Maricopa County, Arizona.

77.     Counterdefendants, *inter alia*, caused events and occurrences in the State of Arizona out of which BDP's claims arise. Counterdefendants' tortious conduct had effects and caused damages in Arizona.

78.     Clear Solutions, the party that BDP seeks to join as a Counterdefendant in these proceedings, is subject to service of process and its joinder will not deprive this Court of subject matter jurisdiction.

79.     Complete relief can not be accorded among the current parties to this action in the absence of Clear Solutions.

80.     In the alternative, Clear Solutions is jointly, severally, and/or in the alternative liable to BDP for its actions arising out of the same transaction, occurrence, and/or series of transactions or occurrences as Counterdefendants Renfrow and E.P., and there are questions of law and/or fact common to all of them. Therefore, jurisdiction and venue are proper in United States District Court for the District of Arizona as to all claims against Counterdefendants.

**BACKGROUND ALLEGATIONS COMMON TO ALL COUNTS**

**A.      The Parties.**

81.     BDP hereby repeats and incorporates by reference each and every denial, admission, and defense in its answer as if herein alleged again in full.

82.     BDP sells, distributes, and markets cleaning and sanitizing chemical compositions for use in a variety of industries including, but not limited to, breweries, restaurants and other food and beverage-related industries ("F&B Industries").

83.    E.P. is in the business of developing cleaning and sanitizing chemical compositions for use in various industries including, but not limited to, the F&B Industries.

84.    Clear Solutions sells, distributes, and markets cleaning and sanitizing chemical compositions for use in a variety of industries which, on information and belief, includes the F&B Industries.

85.    Renfrow is, based upon his representations, a chemical engineer who developed, among other things, cleaning and sanitizing chemical compositions for use in various industries including, but not limited to, the F&B Industries.

86.    Renfrow is the President of E.P.

87.    Renfrow is the manager and a member of Clear Solutions.   Based on information and belief, Renfrow held an ownership interest in Clear Solutions before, and at the time of, the execution of an agreement between Clear Solutions and BDP.

**B.     Letter of Understanding.**

88.    On or about May 6, 2002, BDP and Renfrow entered into a Letter of Understanding wherein they agreed that, contingent upon mutual development and executions of a licensing agreement and a separate consulting agreement, BDP would pay Renfrow periodic royalty fees for the use of certain intellectual property and a monthly consulting fee for consulting services.

89.    Although the Letter of Understanding envisioned entering into subsequent agreements and provided some key terms for those agreements, the Letter of Understanding, in an of itself, did not impose any obligations on the parties with regard to licensing, royalties, consulting, or related payments.

**C.     License Agreement.**

90.    On or about July 29, 2002, BDP, on the one hand, and E.P. and Renfrow, on the other hand, entered into the License Agreement which memorialized some of the terms

of the Letter of Understanding.  Pursuant to the License Agreement, E.P. and Renfrow have granted BDP an exclusive worldwide license, including the right to grant sublicenses, to manufacture and sell certain products developed and/or owned by E.P. and Renfrow (the "Products").

91.   Pursuant to the License Agreement, BDP is to pay E.P. and Renfrow a percentage of the gross revenues earned from the sale of the Products as a Royalty Fee.

92.   The term of the License Agreement was initially two years, and included automatic annual renewals thereafter, contingent upon BDP's continued payment of the Royalty Fee.  The renewals are still in effect.

93.   The License Agreement contained a Non-Competition provision which precluded competition with regard to the Products for a period of twelve months following termination of the License Agreement by all parties, including E.P. and Renfrow.

94.   The License Agreement contained no provisions creating an obligation on the part of BDP or Renfrow with regard to any consulting services by Renfrow to BDP.

95.   The License Agreement contained a provision which specifically states "This is the entire agreement between the parties".

96.   The License Agreement provided for an award of attorney's fees and reasonable costs for the prevailing party in any arbitration or litigation.

97.   The License Agreement is valid and enforceable, and BDP continues to honor it to date.

98.   E.P. and Renfrow have breached and/or interfered with the License Agreement, and have wrongfully, an in bad faith, attempted to terminate it without following the express provisions thereof or having a proper basis for doing so.

**D.     Consulting by Renfrow.**

99.   BDP and Renfrow never memorialized the consulting arrangement between the parties in a written agreement as was contemplated by the Letter of Understanding.

11

1    However, BDP did retain Renfrow as an at-will consultant and paid him consulting fees

2    for some time.

3        100.    Because no written consulting agreement was in fact entered into, BDP and

4    Renfrow's relationship regarding Renfrow's consulting services was at-will rather than

5    based on a written contract having a specified term.

6        101.    In fact, in 2005, BDP presented Renfrow with a written consulting

7    agreement which Renfrow refused to sign.  Furthermore, on or about May 10, 2005,

8    Renfrow's counsel, G. Gregory Eagleburger ("Eagleburger"), indicated that he would draft

9    a consulting agreement to be executed by BDP and Renfrow.  Eagleburger never drafted

10    that agreement, and BDP and Renfrow never entered into a written consulting agreement.

11        102.    In conjunction with Renfrow's consulting, BDP paid Renfrow a monthly

12    salary of $8,000, commissions based on sales and customer retention, and provided $2,500

13    monthly for reimbursement of office expenses.  In total, BDP paid Renfrow over $400,000

14    in consulting fees and related costs and expenses over the course of the relationship

15    between the parties.

16        103.    Renfrow's monthly consulting fee was reduced on some occasions based on

17    his failure to perform by, *inter alia*: (1) failing to contact BDP customers and suppliers; (2)

18    failing to respond to correspondence from BDP; and (3) otherwise failing to keep BDP

19    apprised of his activities.

20        104.    BDP, throughout the period Renfrow was to have been acting as a consultant

21    on its behalf, also paid for numerous trips during which Renfrow was to have been

22    soliciting, negotiating, and otherwise doing business on behalf of BDP.

23        105.    Contrary to Renfrow's fiduciary and contractual obligations, Renfrow,

24    throughout the consulting relationship, *inter alia*: (1) used BDP assets to obtain personal

25    gain by, among other things, secretly soliciting and negotiating with BDP customers for

26    his own personal benefit and/or for the benefit of E.P. and/or Clear Solutions while

utilizing an office and while on trips funded by BDP for the purposes of BDP-related business; (2) attempted to circumvent BDP by requesting that customers place orders through Renfrow, Clear Solutions, and/or E.P. rather than going directly through BDP; (3) attempted to circumvent BDP by interacting with and placing orders with suppliers as Renfrow, Clear Solutions, and/or E.P. rather than on behalf of BDP; (4) failed to act in the best interest of BDP by recommending a business relationship with an entity with which Renfrow was associated as more fully described below in section F entitled The Sub-License Agreement; and (5) generally failed to perform the duties required of him as a consultant to BDP.

106.   BDP, as it had the right to do, terminated Renfrow as a consultant on December 1, 2005.

**E.     The March 2003 Agreement.**

107.   On or about March 7, 2003, Accseus, BDP, E.P., and Renfrow entered into the March 2003 Agreement which envisioned the licensing of additional technology by E.P. and Renfrow to BDP, and memorialized some of the terms of the compensation structure for Renfrow's at-will consulting duties.   The March 2003 Agreement did not change the at-will nature of the relationship between BDP and Renfrow.

108.   The March 2003 Agreement was developed based upon the expectation that Accseus would be playing a significant role as a joint venture partner by raising and/or investing one million dollars -- that expectation never materialized.

109.   Soon after execution of the March 2003 Agreement, Accseus indicated that it would not perform.

110.   Pursuant to the March 2003 Agreement, E.P. and Renfrow were to, *inter alia*, (1) sign a modified licensing agreement providing BDP the exclusive rights to manufacture and produce unique products developed by Renfrow for the brewing, dairy, food, soda, and juice industries; and (2) help in any way to develop, manufacture, and sell

all products of BDP as well as products developed for BDP by Renfrow, which included developing or aiding in the development of new products sought by BDP.

111.   E.P. and Renfrow breached the licensing agreement by failing to: (1) perform the consulting duties associated with the compensation structure memorialized by the March 2003 Agreement; (2) sign the modified licensing agreement for the brewing, dairy, food, soda, and juice industries, despite repeated urging by BDP and BDP's presenting a draft of the agreement to E.P. and Renfrow; and (3) assist in the development, manufacture, and sale of BDP products.

112.   E.P., Renfrow, and BDP subsequently entered into an oral agreement for the technology associated with the brewing, dairy, food, soda, and juice industries that was mentioned in the March 2003 Agreement.  The term of that agreement is to last as long as BDP continues to pay royalties for the technology and remains in effect to date.

**F.     The Sub-License Agreement.**

113.   On or about November 7, 2004, BDP and Clear Solutions entered into a Sub-License Agreement.

114.   The Sub-License Agreement granted Clear Solutions an exclusive sub-license to utilize certain technology and applications thereof.

115.   BDP entered into the Sub-License Agreement as a result of Renfrow's advice, in his capacity as a consultant to BDP, to do so.

116.   E.P., Clear Solutions, Renfrow, and Eagleburger, counsel acting for all of Counterdefendants and an individual holding an ownership interest in Clear Solutions: (1) intentionally failed to disclose to BDP that Renfrow was the manager and a member of Clear Solutions; (2) affirmatively represented to BDP that Clear Solutions would hire a full-time salesperson to carry out the Sub-License Agreement and that Renfrow would not have involvement in the operations of Clear Solutions or execution of the Sub-License Agreement; (3) affirmatively represented to BDP that Clear Solutions would invest

14

substantial capital into executing the Sub-License Agreement; and (4) affirmatively represented to BDP that Clear Solutions was capable of and would make sales in the first year of in excess of $500,000. By doing so, E.P. and Renfrow induced BDP, *via* affirmative representation, into sub-licensing *back* to Renfrow the exclusive license granted to BDP *by* Renfrow and E.P.

117. Pursuant to Paragraph 2 of the Sub-License Agreement, Clear Solutions was obligated to "advise BDP of all prospective customers who sell competing products to breweries and allow BDP to join in such marketing efforts and have final approval."

118. Clear Solutions represented to BDP that it has been in contact with at least one prospective customer of BDP, Mays Group, which sells competing products to breweries.

119. Renfrow, pursuant to his consulting duties, should have been in contact with Mays Group on behalf of BDP.

120. Despite Renfrow's obligations, Clear Solutions, the entity of which Renfrow was a member and manager, communicated to BDP that Clear Solutions would not facilitate communications between BDP and Mays Group without additional compensation.

121. Clear Solutions, further advised BDP that Clear Solutions entered into a sub-license agreement with Mays Group that prohibits Mays Group from directly contacting BDP.

122. Clear Solutions, pursuant to the Sub-License Agreement, was also obligated to "market produce and transport all products sold to customers in the F&B Industry and pay BDP" a percentage of sales as a royalty fee.

123. Clear Solutions failed to use reasonable efforts to market the products that were the subject of the Sub-License Agreement. In the first year of the Sub-License Agreement, Clear Solutions paid BDP only $386.59 in royalties which, in turn, meant that

they sold approximately $2,100.00 in products, rather than the $500,000.00 represented by Clear Solutions and Renfrow during negotiations.

124.   As a result of Clear Solutions' breaches and the discovery of self-dealing and misrepresentations by Renfrow and Eagleburger, BDP terminated the Sub-License Agreement effective December 1, 2005.

**G.   Counterdefendants' recent conduct.**

125.   On December 1, 2005, Renfrow sent a letter to DuPont advising that any sale of ingredients to BDP would constitute patent infringement.   Subsequently, both Renfrow and Eagleburger made phone calls to DuPont to the same end.

126.   BDP filed the Florida Lawsuit against E.P., Clear Solutions, and Renfrow on December 2, 2005.

127.   In the Florida Lawsuit, BDP alleged breach of contract against E.P., Renfrow, and Clear Solutions, declaratory judgment against E.P. and Renfrow, fraudulent inducement against E.P., Renfrow, and Clear Solutions, and tortious interference against E.P. and Renfrow.

128.   On or about December 15, 2005, Renfrow revoked his consent (which requirement existed unbeknownst to BDP and pursuant to a secret agreement entered into prior to Renfrow's tenure as a consultant to BDP) for one of BDP's suppliers, Southside River Rail, to provide blending services for the Products to BDP.   Renfrow had previously insisted that BDP use Southside River Rail for their blending needs.

129.   On January 3, 2006, E.P. and Renfrow filed the instant action.

130.   On January 3, 2006, before serving the summons and complaint on BDP, E.P. and Renfrow, facilitated and, on information and belief, initiated by Eagleburger, forwarded a copy of the instant action to Miller Brewing Company, falsely advising them that BDP no longer had the right to sell the Products.   Miller Brewing Company is one of BDP's larger customers.

131.   On January 5, 2006, before serving the summons and complaint on BDP, E.P. and Renfrow, facilitated and, on information and belief, initiated by Eagleburger, forwarded a copy of the instant action to BDP's largest customer, Micro-Matic, accompanied by false statements regarding the parties' respective rights to the Products, all in an attempt to induce Micro-Matic to discontinue doing business with BDP, and to place economic pressure on BDP.

132.   On information and belief, E.P. and Renfrow, facilitated and, on information and belief, initiated by Eagleburger, forwarded additional copies of the instant action to BDP's customers and suppliers, both potential and existing, before serving summons and complaint on BDP, and accompanied by false statements regarding the parties' respective rights to the Products and threats of patent infringement claims, all in an attempt to induce those customers and suppliers to cease doing business with BDP.

133.   In or about January 2006, Renfrow and Eagleburger contacted Micro-Matic and falsely represented to them that they are named by BDP or will be named by BDP in a lawsuit, in an attempt to induce Micro-Matic to discontinue doing business with BDP.

## COUNT ONE

### (Declaratory Judgment for non-infringement of U.S. Patent Nos. 6,555,511 and 6,855,679)

134.   BDP hereby repeats and incorporates by reference all of the responses and allegations set forth above.

135.   This action arises under the Federal Declaratory Judgment Statute, namely, 28 U.S.C. § 2201.

136.   This is an action arising under the patent laws of the United States of America, namely, 35 U.S.C. § 271.

137.   An actual dispute and/or controversy exists between the parties.

138.   Jurisdiction is proper with this court pursuant to 28 U.S.C. § 1338(a).

139.   Venue is proper with this court pursuant to 28 U.S.C. § 1400(b).

**A.   Non-Infringement of U.S. Patent No. 6,855,679.**

140.   BDP hereby repeats and incorporates by reference all of the responses and allegations set forth above.

141.   On or about February 15, 2005, Renfrow had issued to him U.S. Patent No. 6,855,679 pertaining to a detergent composition developed for and on behalf of BDP.

142.   The '679 patent is directed to a detergent blend which, for its uniqueness, relies upon a specific blend of an amphoteric sultaine surfactant hydrotope and a fluorinated surfactant which surfactant is a 50/50 weight mixture of two types of phosphonic acid-based perfluoro compounds.

143.   During the course of the prosecution of this application it was necessary, in order to obtain issuance of the patent, that the claims of this patent be limited to the specific fluorinated surfactant blend and the specific hydrotope.

144.   During the course of the relationship between the parties, Renfrow initiated a change in the formulation of the products which he designed for BDP to such an extent to bring the formulation outside the scope of the '679 Patent.

145.   The present composition is being manufactured and sold by BDP based on Renfrow's own revised formulation and does not include such fluorinated surfactant blend and, due to the principals of file history estoppel, Renfrow cannot now seek to expand the scope of the patent to include the surfactant blend of '679 patent.

146.   E.P. and Renfrow's knowingly false assertions to customers that the BDP formulations fall within the scope of the patents have caused and are continuing to cause irreparable harm and unless enjoined by this court will continue to do so.

147.   BDP is without adequate remedy at law.

**B.     Non-Infringement of U.S. Patent No. 6,855,511.**

148.    BDP hereby repeats and incorporates by reference all of the responses and allegations set forth above.

149.    On or about April 29, 2003, Renfrow had issued to him U.S. Patent No. 6,555,511 which is directed to a detergent composition having specific components, namely, an alcohol alkoxylate nonionic surfactant and an amphoteric sultaine-based hydrotrope.

150.    During the course of the relationship between the parties, Renfrow and BDP created certain formulations which do not contain alcohol alkoxylate nonionic surfactant. However, the '511 patent requires two nonionic surfactants, one having a cloud point less than 14°C and second having a cloud point greater than 40°C.

151.    The present compositions being manufactured and sold by BDP are based on Renfrow's own revised formulations which, as noted, do not include such a mixture of nonionic surfactants and, due to the principals of file history estoppel, Renfrow cannot now seek to expand the scope of the patent to include such surfactants.

152.    Renfrow, knowing full well that the formulations being sold by BDP are outside the scope of the patent, has threatened and continues to threaten customers with patent infringement knowing the falsity of such assertions, and as a consequence thereof, has caused and will continue to cause irreparable harm to BDP unless enjoined by the court.

153.    BDP has no adequate remedy at law.

**C.     Invalidity of the '511 Patent.**

154.    BDP hereby repeats and incorporates by reference all of the responses and allegations set forth above.

155.    According to the specification of the '511 Patent, it is necessary that there be two alcohol alkoxylate nonionic surfactants present in the detergent thereof.

156.   Claim 1 of the '511 Patent is invalid pursuant to the principles of 35 U.S.C. § 112 for failure to particularly point out and distinctly claim that which the applicant regards as the invention.

157.   Claim 1 of the patent does not recite the presence of two surfactants but only one. However, the one such surfactant cannot have both a cloud point less than 14°C and a cloud point greater than 40°C.  As a matter of law such patent is, therefore, invalid and unenforceable.

158.   Therefore, BDP is entitled to declaratory judgment that: (1) BDP does not infringe U.S. Patent No. 6,855,679; (2) BDP does not infringe U.S. Patent No. 6,555,511; (3) U.S. Patent No. 6,555,511 is not invalid; (4) E.P. and Renfrow having knowingly falsely asserted these patents against BDP and its customers thereby renders this case exceptional within the meaning of the Patent Statutes; (5) BDP is entitled to attorney fees and costs incurred as a consequence of having to bring this action; and (6) E.P. and Renfrow, jointly and severally, and all others acting in concert therewith be and are hereby enjoined, both preliminarily and permanently, from asserting in any manner whatsoever that BDP infringes in any way U.S. Patent Nos. 6,855,679 or 6,555,111.

159.   Plaintiff seeks this declaratory judgment as a remedy in aid of its other claims herein.

## COUNT TWO

### (Declaratory judgment against all Counterdefendants)

160.   BDP hereby repeats and incorporates by reference all of the responses and allegations set forth above.

161.   A justiciable dispute has arisen regarding the parties' relative rights pursuant to certain technology, written and oral agreements, and at-will relationships described in this Answer and Counterclaim.

162.   A case of actual controversy exists and BDP is, therefore, entitled to declaratory judgment pursuant to 28 U.S.C. § 2201 and FED. R. CIV. P. 57.

163.   BDP seeks this declaratory judgment as a remedy in aid of its other claims herein.

### COUNT THREE

**(Breach of contract as to the License Agreement against E.P. and Renfrow)**

164.   BDP hereby repeats and incorporates by reference all of the responses and allegations set forth above.

165.   BDP, on the one hand, and E.P and Renfrow, on the other hand, entered into a valid and binding contract -- the License Agreement.

166.   The agreement imposed contractual obligations on E.P. and Renfrow.

167.   E.P. and Renfrow willfully breached and otherwise failed to perform under the agreement by, *inter alia*: (1) attempting to terminate the License Agreement without complying with the 30-day notice provision; (2) violating the non-competition provision contained in the License Agreement by competing with BDP during the term of the License Agreement as well as after E.P. and Renfrow's alleged termination thereof; (3) consistently ignoring requests by BDP for technical information relating to the licensed technology; (4) purporting to act in the best interests of BDP in respect to inducing BDP to enter into a contractual relationship with Clear Solutions, without disclosing that Renfrow was the managing member of Clear Solutions; and (5) making false representations to BDP's customers and potential customers regarding BDP's business and E.P. and Renfrow's authority or lack of authority in respect to BDP's business.

168.   As a result of E.P. and Renfrow's numerous breaches of the agreements, BDP has suffered irreparable competitive injuries and monetary damages in an amount to be proven at trial.

169.   As this matter arises out of contract, BDP is entitled to its attorneys' fees pursuant to, *inter alia*, A.R.S. § 12-341.01.

## COUNT FOUR

### (Breach of the covenant of good faith and fair dealing based on the License Agreement against E.P. and Renfrow)

170.   BDP hereby repeats and incorporates by reference all of the responses and allegations set forth above.

171.   Implied into every contract is a covenant of good faith and fair dealing in its performance and enforcement.

172.   E.P. and Renfrow were obligated to act in BDP's best interest.

173.   Instead, E.P. and Renfrow, *inter alia*: (1) induced BDP to enter into an agreement with Clear Solutions, an entity that, unbeknownst to BDP at the outset of negotiations, Renfrow was the manger and a member of, and had a secret ownership interest in; and (2) made false representations to BDP's customers and potential customers regarding BDP's business and E.P. and Renfrow's authority or lack of authority in respect to BDP's business.

174.   E.P. and Renfrow's actions constitute a breach of the covenant of good faith and fair dealing.

175.   As a direct and proximate result of E.P. and Renfrow's conduct, BDP has been damaged in an amount to be proven at trial.

176.   As this matter arises out of contract, BDP is entitled to its attorneys' fees pursuant to, *inter alia*, A.R.S. § 12-341.01.

## COUNT FIVE

### (Breach of Contract as to the March 2003 Agreement against E.P. and Renfrow)

177.   BDP hereby repeats and incorporates by reference all of the responses and allegations set forth above.

178.   E.P., Renfrow, Accseus, and BDP entered into a binding agreement -- the March 2003 Agreement.

179.   The March 2003 Agreement imposed contractual obligations on E.P. and Renfrow.

180.   E.P. and Renfrow breached the March 2003 Agreement by, *inter alia*, failing to: (1) perform the consulting duties associated with the compensation structure memorialized by the March 2003 Agreement; (2) sign the modified licensing agreement for the brewing, dairy, food, soda, and juice industries; and (3) assist in the development, manufacture, and sale of BDP products.

181.   As this matter arises out of contract, BDP is entitled to its attorneys' fees pursuant to, *inter alia*, A.R.S. § 12-341.01.

## COUNT SIX

**(Breach of the covenant of good faith and fair dealing based on the March 2003 Agreement against E.P. and Renfrow)**

182.   BDP hereby repeats and incorporates by reference all of the responses and allegations set forth above.

183.   Implied into every contract is a covenant of good faith and fair dealing in its performance and enforcement.

184.   E.P. and Renfrow were obligated to act in BDP's best interest.

185.   Instead, E.P. and Renfrow, *inter alia*: (1) solicited potential and existing BDP customers for their own gain; (2) solicited potential and existing BDP suppliers for their own gain; (3) induced potential BDP customers to enter into agreements prohibiting them from entering into negotiations or otherwise communicating with BDP

186.   E.P. and Renfrow's actions constitute a breach of the covenant of good faith and fair dealing.

187.   As a direct and proximate result of E.P. and Renfrow's conduct, BDP has been damaged in an amount to be proven at trial.

188.   As this matter arises out of contract, BDP is entitled to its attorneys' fees pursuant to, *inter alia*, A.R.S. § 12-341.01.

### COUNT SEVEN

**(Breach of contract as to Sub-License Agreement against Clear Solutions)**

189.   BDP hereby repeats and incorporates by reference all of the responses and allegations set forth above.

190.   BDP and Clear Solutions entered into the Sub-License Agreement.

191.   The Sub-License Agreement imposed contractual obligations on Clear Solutions.

192.   Clear Solutions breached the Sub-License agreement by, *inter alia*, failing to perform and to use reasonable efforts to market, produce, and transport the products that were the subject of the Sub-License Agreement.

193.   As this matter arises out of contract, BDP is entitled to its attorneys' fees pursuant to, *inter alia*, A.R.S. § 12-341.01.

### COUNT EIGHT

**(Breach of the covenant of good faith and fair dealing as to the Sub-License Agreement against Clear Solutions)**

194.   BDP hereby repeats and incorporates by reference all of the responses and allegations set forth above.

195.   Implied into every contract is a covenant of good faith and fair dealing.

196.   Clear Solutions, in conjunction with Renfrow and E.P., intentionally failed to disclose to BDP that Renfrow was the manager and member of Clear Solutions, and that the transaction constituted self-dealing that would directly benefit Renfrow.

197.    Clear Solutions' actions constitute a breach of the covenant of good faith and fair dealing.

198.    As a direct and proximate result of Clear Solutions' conduct, BDP has been damaged in an amount to be proven at trial.

199.    As this matter arises out of contract, BDP is entitled to its attorneys' fees pursuant to, *inter alia*, A.R.S. § 12-341.01.

**COUNT NINE**

**(Fraudulent inducement as to the Sub-License Agreement against Clear Solutions and Renfrow)**

200.    BDP hereby repeats and incorporates by reference all of the responses and allegations set forth above.

201.    Clear Solutions, Renfrow, and Eagleburger made certain representations to BDP including, *inter alia*: (1) that Clear Solutions was an independent entity that would use its best efforts to market and sell the products that were the subject of the Sub-License Agreement; (2) that Clear Solutions was capable of and would sell $500,000 in the first year of the agreement; (3) that Clear Solutions would hire a full-time salesperson to carry out its obligations under the Sub-License Agreement; and (4) that Clear Solutions would invest substantial capital into execution of the Sub-License Agreement.

202.    Clear Solutions, Renfrow, and Eagleburger's representations were false in that: (1) Renfrow was a manager and member of Clear Solutions; (2) Eagleburger held an ownership interest in Clear Solutions and was involved in its formation; (3) Clear Solutions never intended to use its best efforts to fulfill the Sub-License Agreement; and (4) Renfrow intended to use Clear Solutions and the Sub-License Agreement as a means of circumventing BDP and acting solely in his own best interests.

203.    Clear Solutions, Renfrow, and Eagleburger knew their representations to be false.

1 204. BDP was not aware of the falsity of the representations.

2 205. Clear Solutions, Renfrow, and Eagleburger's misrepresentations were
3 material in that they effectively induced BDP to enter into a sub-licensing agreement with
4 the individual who had previously granted BDP an exclusive license for the same
5 technology and was compensated therefor.

6 206. Clear Solutions, Renfrow, and Eagleburger intended their representations to
7 induce BDP to enter into the Sub-License Agreement.

8 207. BDP relied on Clear Solutions, Renfrow, and Eagleburger's representations
9 by entering into the Sub-License Agreement with Clear Solutions.

10 208. BDP's reliance on Clear Solutions, Renfrow, and Eagleburger's
11 representations was based in part on Renfrow's status as a paid consultant to BDP.

12 209. BDP is entitled to rescission of the purported agreement, and/or its being
13 declared void or voidable.

14 210. In addition, as a direct and proximate result of Renfrow and Clear Solutions'
15 conduct, BDP has been damaged in an amount to be proven at trial.

16 **COUNT TEN**

17 **(Constructive fraud as to the Sub-License Agreement against Clear Solutions and**
18 **Renfrow)**

19 211. BDP hereby repeats and incorporates by reference all of the responses and
20 allegations set forth above.

21 212. Clear Solutions, Renfrow, and Eagleburger made certain representations to
22 BDP including, *inter alia*, (1) that Clear Solutions was an independent entity that would
23 use its best efforts to market and sell the products that were the subject of the Sub-License
24 Agreement; (2) that Clear Solutions was capable of and would sell $500,000 in the first
25 year of the agreement; (3) that Clear Solutions would hire a full-time salesperson to carry

26

1   out its obligations under the Sub-License Agreement; and (4) that Clear Solutions would
2   invest substantial capital into execution of the Sub-License Agreement.

3       213.   Clear Solutions, Renfrow, and Eagleburger's representations were false in
4   that: (1) Renfrow was a manager and member of Clear Solutions; (2) Eagleburger held an
5   ownership interest in Clear Solutions and was involved in its formation; (3) Clear
6   Solutions never intended to use its best efforts to fulfill the Sub-License Agreement; and
7   (4) Renfrow intended to use Clear Solutions and the Sub-License Agreement as a means of
8   circumventing BDP and acting in his own best interests.

9       214.   Clear Solutions, Renfrow, and Eagleburger knew their representations to be
10  false.

11      215.   BDP was not aware of the falsity of the representations.

12      216.   Clear Solutions, Renfrow, and BDP's misrepresentations were material in
13  that they effectively induced BDP to enter into a sub-licensing agreement with the
14  individual who previously granted BDP an exclusive license.

15      217.   BDP relied on Clear Solutions, Renfrow, and Eagleburger's representations
16  by entering into the Sub-License Agreement with Clear Solutions and refraining from
17  seeking other legitimate sub-licensees.

18      218.   BDP's reliance on Clear Solutions, Renfrow, and Eagleburger's
19  representations was based in part on Renfrow's status as a paid consultant to BDP.

20      219.   As a direct and proximate result of Clear Solutions, Renfrow, and
21  Eagleburger's conduct, BDP has been damaged in an amount to be proven at trial.

22                          **COUNT ELEVEN**

23      **(Negligent misrepresentation against Clear Solutions and Renfrow)**

24      220.   BDP hereby repeats and incorporates by reference all of the responses and
25  allegations set forth above.

26

27

221. Clear Solutions, Renfrow, and Eagleburger made certain representations to BDP including, *inter alia*, (1) that Clear Solutions was an independent entity that would use its best efforts to market and sell the products that were the subject of the Sub-License Agreement; (2) that Clear Solutions was capable of and would sell $500,000 in the first year of the agreement; (3) that Clear Solutions would hire a full-time salesperson to carry out its obligations under the Sub-License Agreement; and (4) that Clear Solutions would invest substantial capital into execution of the Sub-License Agreement.

222. Clear Solutions, Renfrow, and Eagleburger's representations were false in that: (1) Renfrow was a manager and member of Clear Solutions; (2) Eagleburger held an ownership interest in Clear Solutions and was involved in its formation; (3) Clear Solutions never intended to use its best efforts to fulfill the Sub-License Agreement; and (4) Renfrow intended to use Clear Solutions and the Sub-License Agreement as a means of circumventing BDP and acting in his own best interests.

223. Clear Solutions, Renfrow, and Eagleburger were negligent as to the falsity of their representations.

224. BDP was not aware of the falsity of the representations.

225. Clear Solutions, Renfrow, and Eagleburger's misrepresentations were material in that they effectively induced BDP to enter into a sub-licensing agreement with the individual who previously granted BDP an exclusive license.

226. Clear Solutions, Renfrow, and Eagleburger intended their representations to induce BDP to enter into the Sub-License Agreement.

227. BDP relied on Clear Solutions, Renfrow, and Eagleburger's representations by entering into the Sub-License Agreement with Clear Solutions.

228. BDP's reliance on Clear Solutions, Renfrow, and Eagleburger's representations was based in part on Renfrow's status as a paid consultant to BDP.

229.   BDP is entitled to rescission of the purported agreement, and/or its being declared void or voidable.

230.   In addition, as a direct and proximate result of Renfrow and Clear Solutions' conduct, BDP has been damaged in an amount to be proven at trial.

## COUNT TWELVE

### (Breach of fiduciary duty against Renfrow)

231.   BDP hereby repeats and incorporates by reference all of the responses and allegations set forth above.

232.   Renfrow was acting as a consultant and agent for BDP regarding the Products.

233.   As a consultant and agent, Renfrow owed BDP a fiduciary duty.

234.   While Renfrow was acting as a consultant, and agent for BDP, he, *inter alia*: (1) solicited potential and existing BDP customers for his own personal gain; (2) solicited potential and existing BDP suppliers for his own personal gain; (3) induced potential BDP customers to enter into agreements prohibiting them from entering into negotiations or otherwise communicating with BDP, (4) induced BDP to enter into an agreement with Clear Solutions, an entity of which Renfrow was, and remains, the manager and a member; (5) failed to and/or refused to follow through on leads provided by or at the request of BDP; (6) consistently ignored and/or responded belligerently and insufficiently to other communications by BDP; (7) failed to account for and supply supporting documentation for office expenses; (8) failed to account for and supply supporting documentation for travel expenses; (9) failed to perform work reasonably expected by BDP; and (10) misused BDP's Material Safety Data Sheets for improper packaging and shipping of corrosive materials to third parties.

235.   Renfrow's actions constitute a breach of his fiduciary duty to BDP.

236.    As a result of Renfrow's actions, BDP has been damaged in an amount to be proven at trial.

## COUNT THIRTEEN

### (Unfair competition pursuant to 15 U.S.C. § 1125(a) against E.P. and Renfrow)

237.    BDP hereby repeats and incorporates by reference all of the responses and allegations set forth above.

238.    On or about February 15, 2005, Renfrow had issued to him U.S. Patent No. 6,855,679 pertaining to a detergent composition developed for and on behalf of BDP.

239.    The '679 patent is directed to a detergent blend which, for its uniqueness, relies upon a specific blend of an amphoteric sultaine surfactant hydrotope and a fluorinated surfactant which surfactant is a 50/50 weight mixture of two types of phosphonic acid-based perfluoro compounds.

240.    During the course of the prosecution of this application it was necessary, in order to obtain issuance of the patent, that the claims of this patent be limited to the specific fluorinated surfactant blend and the specific hydrotope.

241.    During the course of the relationship between the parties, Renfrow initiated a change in the formulation of the products which he designed for BDP to such an extent to bring the formulation outside the scope of the '679 Patent.

242.    The present composition is being manufactured and sold by BDP based on Renfrow's own revised formulation and does not include such fluorinated surfactant blend and, due to the principals of file history estoppel, Renfrow cannot now seek to expand the scope of the patent to include the surfactant blend of '679 patent.

243.    E.P. and Renfrow knowingly made false assertions to customers that the BDP formulations fall within the scope of the patents.

244.    On or about April 29, 2003, Renfrow had issued to him U.S. Patent No. 6,555,511 which is directed to a detergent composition having specific components,

1   namely, an alcohol alkoxylate nonionic surfactant and an amphoteric sultaine-based
2   hydrotrope.

3       245.   During the course of the relationship between the parties, Renfrow and BDP
4   created certain formulations which do not contain alcohol alkoxylate nonionic surfactant.
5   However, the '511 patent requires two nonionic surfactants, one having a cloud point less
6   than 14°C and second having a cloud point greater than 40°C.

7       246.   The present compositions being manufactured and sold by BDP are based on
8   Renfrow's own revised formulations which, as noted, do not include such a mixture of
9   nonionic surfactants and, due to the principals of file history estoppel Renfrow cannot now
10  seek to expand the scope of the patent to include such surfactants.

11      247.   Renfrow, knowing full well that the formulations being sold by BDP are
12  outside the scope of the patent, has threatened and continues to threaten customers with
13  patent infringement knowing the falsity of such assertions

14      248.   E.P. and Renfrow's representations constituted a violation of 15 U.S.C. §
15  1125(a) in that they were: (1) false designations of origin; (2) false or misleading
16  descriptions of fact; and/or (3) false or misleading representations of fact, which were
17  likely to cause confusion or mistake.

18      249.   As a result of E.P. and Renfrow's conduct, BDP has been damaged in an
19  amount to be proven at trial.

20                          **COUNT FOURTEEN**

21                   **(Unjust enrichment against Renfrow)**

22      250.   BDP hereby repeats and incorporates by reference all of the responses and
23  allegations set forth above.

24      251.   Renfrow was, pursuant to the at-will consulting relationship, being paid
25  remuneration in the amount of $8,000 per month for consulting services to BDP. These
26  monies were consistently advanced to Renfrow every two weeks. Additionally, BDP,

1  pursuant to the at-will consulting relationship, was paying Renfrow commissions based in
2  part on customer contact and retention, and the amount of $2,500 per month for office
3  expenses and paid other travel and related expenses.

4      252.   Unbeknownst to BDP, Renfrow was not acting in BDP's best interests
5  because he was, *inter alia*: (1) approaching competitors, and potential existing suppliers
6  and customers of BDP's in an attempt to enter into business relationships with them
7  personally when he should have referred them to BDP; and (2) failing to disclose his
8  relationship with Clear Solutions during his purported negotiations with Clear Solutions
9  on behalf of BDP.

10     253.   Renfrow's actions ran directly contrary to his duties to BDP as a consultant.

11     254.   Renfrow, during this period, was being paid by BDP and financially
12 supported as a consultant.

13     255.   Renfrow was unjustly enriched by these payments as he was not acting in
14 BDP's interests and not performing adequately during his tenure as a consultant to BDP.

15     256.   As a result of Renfrow's actions, BDP has been damaged in an amount to be
16 proven at trial.

17                              **COUNT FIFTEEN**

18 **(Tortious interference with contractual relations against E.P., Clear Solutions, and**
19                                   **Renfrow)**

20     257.   BDP hereby repeats and incorporates by reference all of the responses and
21 allegations set forth above.

22     258.   BDP has an ongoing contractual and business relationship with one of its
23 customers, Micro-Matic, a manufacturer and supplier of draft beer equipment.

24     259.   E.P., Clear Solutions, Renfrow, and Eagleburger were aware of BDP's
25 contractual and business relationship with Micro-Matic.

26

32

260.  E.P., Renfrow, and Clear Solutions, intentionally and without justification, interfered with BDP's relationship with Micro-Matic by: (1) misrepresenting to Micro-Matic that E.P. and Renfrow had the ability to sell, and/or license certain technology to BDP's competitors when, in fact, the technology is licensed exclusively to BDP; and (2) misrepresenting to Micro-Matic that BDP named or will name them in a lawsuit.

261.  E.P., Renfrow, and Eagleburger, intentionally and without justification, forwarded a copy of the instant action accompanied by accompanied by correspondence containing falsehoods about the respective rights of the parties, all before serving the summons and complaint on BDP, and in an effort to interfere with BDP's business relationship with Micro-Matic.

262.  As a result of E.P., Clear Solutions, Renfrow, and Eagleburger's actions, BDP has been damaged in an amount to be determined at trial.

## COUNT SIXTEEN

### (Tortious interference with business expectancy against E.P., Renfrow, and Clear Solutions)

263.  BDP hereby repeats and incorporates by reference all of the responses and allegations set forth above.

264.  BDP has ongoing business relationships with certain suppliers and customers.

265.  E.P., Clear Solutions, Renfrow, and Eagleburger were aware of BDP's business relationship with those suppliers and customers.

266.  E.P., Clear Solutions, and Renfrow, intentionally and without justification, interfered with BDP's relationship with those suppliers and customers by, *inter alia*, misrepresenting to them that E.P., Renfrow, and Clear Solutions had the authority to sell certain technology exclusively licensed to BDP.

267.   E.P., Renfrow, and Eagleburger, on information and belief, intentionally and without justification, interfered with BDP's relationship with those suppliers and customers by, *inter alia*, forwarding a copy of the instant action to BDP's potential and existing customers accompanied by correspondence containing falsehoods about the respective rights of the parties, all before serving the summons and complaint on BDP, and in an effort to interfere with BDP's business relationship with those suppliers and customers.

268.   Renfrow, intentionally and without justification, interfered with BDP's relationship with those suppliers and customers by, *inter alia*, instructing at least one of BDP's suppliers not to sell to BDP.

269.   As a result of E.P., Clear Solutions, Renfrow, and Eagleburger's actions, BDP has been damaged in an amount to be determined at trial.

**COUNT SEVENTEEN**

**(Conversion against Clear Solutions and Renfrow)**

270.   BDP hereby repeats and incorporates by reference all of the responses and allegations set forth above.

271.   Clear Solutions was a sub-licensee of certain technology as a result of the Sub-License Agreement.

272.   BDP terminated the Sub-License Agreement based on Clear Solutions' breach of that Agreement.

273.   Subsequent to the termination, Clear Solutions, and Renfrow, both individually and on behalf of Clear Solutions, continued to market and sell the technology despite the fact that BDP held an exclusive license thereto.

274.   As a result of Counterdefendants' actions, BDP has been damaged in an amount to be proven at trial.

1

2

## COUNT EIGHTEEN

### (Abuse of process against E.P. and Renfrow)

3    275.   BDP hereby repeats and incorporates by reference all of the responses and

4  allegations set forth above.

5    276.   On or about January 3, 2006, E.P. and Renfrow filed the instant action in this

6  Court.

7    277.   Subsequent to the commencement of the action, E.P., Renfrow, and

8  Eagleburger committed willful acts that were not proper in the use of such process.

9    278.   The act, or acts, of misuse were, *inter alia*, prior to serving the summons and

10  complaint on BDP, E.P., Renfrow, and Eagleburger forwarding a copy of the complaint to

11  potential and current BDP suppliers and customers accompanied by correspondence

12  containing falsehoods about the respective rights of the parties, all in an effort to induce

13  those suppliers and customers to cease doing business and/or negotiations with BDP.

14    279.   E.P., Renfrow, and Eagleburger had an ulterior motive in the abuse of

15  process because they hold an ownership interest in Clear Solutions, a company that

16  competes with BDP with regard to the Products and other technology, and a former sub-

17  licensee of BDP.

18    280.   As a result of E.P., Renfrow, and Eagleburger's misuse of process, BDP has

19  been damaged in an amount to be proven at trial.

20    281.   E.P., Renfrow, and Eagleburger's abuse of process was willful and wanton

21  and committed with malice and reckless disregard of the rights of BDP, and, as a result,

22  BDP is entitled to recover punitive damages in an amount to be determined by this Court

23  in its discretion at trial.

24

25

26

## COUNT NINETEEN

### (Punitive damages against all Counterdefendants)

282.   BDP hereby repeats and incorporates by reference all of the responses and allegations set forth above.

283.   Counterdefendants' conduct was willful, wanton and/or malicious, or done with reckless disregard to the interests of BDP.  It was based on spite, pettiness, ill will, or some other unlawful basis, designed to injure, harass, harm, humiliate, and put BDP in an unfavorable light.

284.   The nature of Counterdefendants' conduct requires that BDP be awarded punitive damages in an amount to be determined by the trier of fact and sufficient to punish Counterdefendants' and to deter future similar conduct by Counterdefendants and others.

## COUNT TWENTY

### (Preliminary and permanent injunction against all Counterdefendants)

285.   BDP hereby repeats and incorporates by reference all of the responses and allegations set forth above.

286.   Counterdefendants continue to interfere with BDP's potential and existing business relationships with suppliers and customers.

287.   Damages alone are an inadequate remedy at law.  As part of the remedy necessary to make BDP whole and as a result of Counterdefendants' conduct as alleged herein, this Court should enter a preliminary and permanent injunction, *inter alia,* prohibiting Counterdefendants from interfering with BDP's potential and existing business relationships with their suppliers and customers.

WHEREFORE, BDP prays for relief against Counterdefendants as follows:

1.   For judgment in their favor on all counts of the Complaint;

2.   For damages as may be proven;

36

3.    For punitive damages;

4.    For pre-judgment and post-judgment interest;

5.    For their attorneys' fees and costs, as may be permitted by applicable law;

6.    For declaratory judgment;

7.    For preliminary and/or permanent injunction;

8.    For such equitable relief as may be required; and

9.    For such other and/or further relief as may be deemed fair and equitable under the circumstances.

RESPECTFULLY SUBMITTED this 19th day of January, 2006.

GALBUT & HUNTER
A Professional Corporation

By:    s/ Raymond M. Hunter

Raymond M. Hunter
Martin R. Galbut
Keith R. Galbut
J. Blake Mayes
Camelback Esplanade, Suite 1020
2425 East Camelback Road
Phoenix, Arizona 85016
Attorneys for Defendant/counterclaimant

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on January 19, 2006 I electronically filed the foregoing with the Clerk of Court for filing and uploading to the CM/ECF system which will send notification of such filing to the following e-mail address:

G. Gregory Eagleburger
ggelaw@aol.com


 s/ Raymond M. Hunter

1    **VERIFICATION**

2    STATE OF ARIZONA    )
                            ) ss.
3    County of Maricopa    )

4

5    C. Drew Hauke hereby states under oath as follows:

6    I am the Chief Executive Officer of BDP Innovative Chemicals Company, a

7    Defendant/Counterclaimant in the above-captioned matter. I have read the foregoing

8    Verified Answer And Counterclaim in its entirety, know the contents thereof, and to the

9    best of my knowledge, information and belief the answers made therein are true and

10   correct.

11   FURTHER AFFIANT SAYETH NOT.

12   DATED this _18_ day of January, 2006.

13

14   _____

15   C. Drew Hauke

16   SUBSCRIBED and SWORN to before me the undersigned notary public this ____

17   day of January, 2006, by C. Drew Hauke.

18

19   _____

20   Notary Public

21   My commission expires:

22

23   _12-19-09_

24

25

26

SABRINA D. JOHNSON
Notary Public - State of Florida
My Commission Expires Dec 19, 2009
Commission # DD 500628
Bonded By National Notary Assn.